*390
 
 Ruffin, C. J.
 

 In contemplation of a marriage between Abner Branson and Susan R. Cox, they entered into articles in 1830, between themselves and Isaac B. Cox, whereby it was agreed that Branson would, when required, convey to Isaac certain slaves, then belonging to the intended wife, to be held by him to the sole and separate use of the wife. Soon after the marriage, Branson died, without having executed any settlement. Subsequently, Mrs. Branson, the widow, intermarried with Isaac W. Grice, and they had one child, Isaac W. Grice the younger; then Grice, the father, died intestate, leaving surviving him the said Susan R., his widow, their said child, and other children, which the said Isaac W., the father, had by a previous marriage. The defendant, P. Murphey, administered on his estate; and, claiming them as a part thereof, he took into his possession some of (he slaves mentioned in the articles. Mrs. Grice also claimed them, under the articles, as her separate property; and for her benefit an action at law was brought in the name of the administrator of her first husband, Branson, against Murphey, for the slaves in his possession; and there was judgment therein for the plaintiff. Murphey then filed his bill in the Court of Equity against Mrs. Grice, Cox, and Branson’s administrator, and therein claimed all the slaves and other personal property mentioned in the articles, as having vested in Grice, the second husband, on his marriage; and
 
 to
 
 that effect a decree was made in that cause in June, 1839.
 

 Pending the suit last mentioned, in contemplation of a third marriage between Susan R. Grice and her present husband, Watson, a settlement was executed by and between those persons and the same Isaac B. Cox, whereby the same negroes — which are named — that were, according to the articles between Miss Cox and her first husband, to have been settled to her separate ana sole use, are as being then the property of Mrs. Grice, settled and conveyed to Cox as a trustee, in trust for the sole and separate use of the intended wife; and, by way of better providing for and advancing Isaac W. Grice, the infant and only child of her preceding marriage, she thereby also, with the consent of the intended husband, conveyed and assigned to' the said Cox
 
 “
 
 the dis
 
 *391
 
 tributive share of the said Susan in and to the personal estate of her former husband, Isaac W. Grice, in trust and for' the use and benefit of Isaac W. Grice, her child by her late husband.
 

 The bill is filed by the last husband, Watson, and his wife, against Isaac W. Grice, the son; Cox, the trustee; and Murphey, the administrator of Grice, the father; and seeks to correct the settlement in respect of the assignment of the said distributive share, so that the infant son shall not have the said slaves, or their value, as part thereof; but that the slaves, mentioned in the settlement and thereby intended to be settled and secured to the mother, should be assigned to her in the division of the estate oí Grice, or made good to her out of her said distributive share; and that Murpbey,the administrator, shall convey and pay to her or her trustee accordingly; and the bill prays, further, for general relief.
 

 The case made in the bill, on which the relief is sought, is, that Mrs. Grice, now Mrs. Watson, was advised by counsel and did believe, that by virtue of the articles between her self and her first husband, the personal personal property, therby secured to her separate use during her first marriage, continued to be so secured upon and during her second marriage and did not vest in her second husband, Grice, without any new marriage articles or settlement between them; and that she was assured by-counsel, that no decree would be made in the suit brought by Murphey in equity, which would deprive her of the benefit of the recovery made against him for her use in the previous suit at law: That the said negroes and her said distributive share in Grice’s estate constituted nearly all she had, as the means of subsistence; and, that as she has lost the slaves, so far as they were considered her exclusive property, she will be left entirely destitute, it the assignment of her distributive share should be enforced against her, to the whole extent of her interest in Grice’s estate, including the said slaves as part thereof. From all which the bill alleges, that it must he manifest that the assignment in favour of the son was founded on a mistake; and it avers that it was founded in a mistake of the parties in supposing, that the distributive share and the said slaves belonged to the
 
 *392
 
 mother, in distinct rights, and that she could assign the former to h®1’ child, without including the slaves, but reserving and settling them for her own usé.
 

 To this bill each of the defendants put in a demurrer, apd assigned two causes: the one, that there was no equity on which to found any relief against the defendants respctively; the other that the bill was multifarious. On argument of the demurrers, the court dismissed the bill, with costs; and the piaintiff appealed.
 

 Against the decree it has been argued, that the demurrers, as respects the point of multifariousness, ought to have been over-ruled, because they are insufficient, inasmuch as,
 
 combination,
 
 charged in the bill, is not denied. The doctrine is so stated by Lord Redesdale in his Treatise, and is adopted in 2 Mad. Eq. 204, in accordance with old cases. But it seems to have been so far drawn into doubt in subsequent cases, that we do not feel inclined, unnecessarily, to put our decision on that point. We think the demurrer will not lie on that ground here, because, in our opinion, the bill is not multifarious. The object of the suit is single. It is so, in respect to the transaction out of which it arises, to the subject matter, and to the relief It is true that each defendant is -not connected with the subject of dispute in the same manner; but each of them is connected with the whole subject of dispute, and, by that means,
 
 connected with each other, and
 
 therefore properly brought before the court in order that the suit may conclude the whole subject. Of course the infant, for whose benefit the assignment was made, must be a party: So must Cox, his trustee and also the trustee of Mrs. Watson in the settlement. So, we also think,- may Murphey be made a party, as in him is the legal title of the subject in controversy, and the controversy is, which of the other parties ought, in this court, to be allowed to call on him for it? We do not say, that he was an indispensable party; for probably, the others might have litigated their rights without him. But he is not an improper party, in any sense; much less in that
 
 of making
 
 the bill multifarious. The bill does not set up separate and distinct claims against the respective defend
 
 *393
 
 ants, but is for only a single matter, namely, a distributive share of an intestate’s estate, consisting partly of particular slaves — in respect of which the plaintiffs ask, that a certain assignment by the plaintiffs may be put out of their way, wholly or in part, so that they may have a right by a decree of the court to receive from the administrator the share, instead of the son, who gets it if the assignment stands. The effect of the bill is, that the administrator, who is a trustee for the next of kin or her assignee, may not dispose of the distributive share to either, until the right be determined, and then to pay according to that determination. We think* therefore, that ground of demurrer fails.
 

 Having disposed oí the objection to the framing of the bill, we next are to consider the question of the plaintiff’s equity. Upon that it seems impossible to hesitate. The bill alleges positively an entire mistake in the mother and her intended husband, as to the nature of her title, and of the extent, to which the assignment of the distributive share would go, in covering the negroes intended to be reserved to the mottu er, and so expressed in the settlement itself. The deed itself, therefore, shews on its face the existence of the mistake. But it is not material, at present, to consider that, inasmuch as the mistake is averred in the bill and the demurrers admit it. Now, there is no head of equity better settled than that it-will relieve against mistakes. Whether that relief can be carried as far as the bill asks, by having the particular slaves-mentioned in the settlement assigned to the son as a- part of his own share or his mother’s, and then by him transferred-to her; or, otherwise, to have their value made good out of the distributive share of the mother* if sufficient therefor, it is unnecessary now to say. The only question, at present,is, Whether the plaintiff be entitled to any relief; if so,- the cause ought to proceed to a decree on the merits.
 

 The decree in the court below must therefore be reversed, and the demurrers overruled wit'h costs in this court, and remanded for further proceedings iff the court of Equity.
 

 Per Curiam, Demurrer over-ruled and cause remanded.